Christian A. Torimino, WSBA #52927
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
1220 SW 3rd Ave, Room 315
Portland, OR 97204
Telephone Number: (202) 306-4948
Email: christian.torimino@usdoj.gov

Attorney for Gregory M. Garvin,
Acting United States Trustee for Region 18

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 20-32792-pcm11 |
| John Southwick, and | **UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY** |
| Rebecca Southwick, | |
| Debtors-in-possession. | |

## UNITED STATES TRUSTEE'S OBJECTION

Gregory M. Garvin, Acting United States Trustee for Region 18 (the "U.S. Trustee"), by and through his undersigned counsel, objects to Debtors' Application to Employ Ted Troutman of the Troutman Law Firm ("Troutman") as DIP counsel (ECF No. 5) (the "Application"). The U.S. Trustee requests denial of Troutman's employment application because Troutman is not a "disinterested person" under 11 U.S.C. § 327(a) and § 101(14) due to Troutman's representation of a creditor, International Collision Repair, LLC, and due to a potential claim that the Debtors may have against the Troutman Law Firm.

## HISTORY

Rebecca and John Southwick (the "Debtors" or "Southwicks") operate an automotive

**Page 1 – UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY**

collision repair business in Portland, Oregon. Prior to August 20, 2020, that business was operated through a separate legal entity: International Collision Repair, LLC ("ICR LLC" or the "LLC"). The LLC had its own assets, debts, contracts, Employer Identification Number, insurance, and bank accounts.[1] The business allegedly found itself in serious financial trouble shortly after the beginning of the COVID-19 related shutdowns. On March 31, 2020, Olsen Daines was retained in connection with a potential bankruptcy filing, though it is unclear whether the Southwicks or the LLC retained the firm. While the Statement of Financial Affairs indicates that Olsen Daines was paid by the Southwicks, it appears that Olsen Daines was preparing a filing for the LLC rather than for the Southwicks personally.

In May 2020, Craig Petersen, the CFO of International Collision Repair, LLC, contacted Troutman. There is a lack of clarity as to whether Troutman represented the LLC or the Southwicks. No engagement letter was provided to Debtors, to the LLC, or to Mr. Petersen outlining the scope of Troutman's representation or identifying the party to be represented. The only agreement for representation between Troutman and Debtors is the agreement dated October 1, 2020 attached to the Application.

In late August, Troutman prepared articles of dissolution for ICR LLC. Troutman also drafted an Assignment and Assumption Agreement (the "Assignment Agreement," See Torimino Dec. Ex. C) by which the LLC transferred certain assets to the Southwicks individually. On August 20, the Assignment Agreement was signed by John and Rebecca Southwick individually and as members of the LLC. On September 1, the Articles of Dissolution for the LLC were filed with the Oregon Secretary of State.

---

[1] The schedules and related documents filed by Debtors in this bankruptcy case include information relevant to the LLC as well as the Debtors. It remains unclear which information relates to the individual debtors and to the LLC.

**Page 2 – UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY**

The Southwicks filed this chapter 11, subchapter V bankruptcy on October 1, 2020. The U.S. Trustee objected to Debtors' first day cash collateral motion on the grounds that funds in the LLC's bank accounts were not property of the estate and, therefore, not cash collateral within the meaning of 11 U.S.C. § 363(a)-(c). (ECF Doc. 13) Following the filing of that objection, on October 5, Debtors and International Collision Repair, LLC entered into a "Ratification of Assignment of Bank Accounts," clarifying that the Assignment Agreement was intended to transfer the LLC's bank accounts. See Torimino Dec. Ex. C. At the hearing on the cash collateral motion, it became clear from testimony that the business still operated almost entirely in the name of the LLC.

On October 7, Troutman sent Debtors a letter outlining "the personal conflict of interest that has now arisen" and requesting Debtors' consent to continue as their counsel (the "Conflict Letter"). See Torimino Dec. Ex. A. On October 19, the Oregon State Bar Professional Liability Fund ("PLF") sent a letter to the Debtors regarding the circumstances surrounding the Assignment Agreement and the concerns raised by the U.S. Trustee, the subchapter V trustee, and the Court (the "Repair Letter"). See Torimino Dec. Ex. B. Without admitting liability or fault, the PLF agreed in the Repair Letter to pay $11,717 toward legal and filing fees for the LLC to file its own separate case. Id. The stated purpose of the LLC's filing would be to "reduce or eliminate possible damages related to the pre-bankruptcy assignment and assumption as well as related conduct." Id.

On October 29, Troutman filed an amended Rule 2014 Verified Statement for Proposed Professional. (ECF Doc. 41). That statement confirms that Troutman "sent several demand letters for the LLC."

The LLC filed its own bankruptcy case on December 2, 2020 with the case number 20-

33271-pcm11. In the Rule 2014 Statement attached to Michael O'Brien's employment application in that case, Mr. O'Brien indicates that he "received a retainer in the amount of $10,000 plus $1,717 to cover the filing fee from the Professional Liability Fund for the benefit of the Debtor [International Collision Repair, LLC]."

## MEMORANDUM IN SUPPORT OF OBJECTION

Generally, professionals cannot recover fees for services performed for a debtor in bankruptcy unless those services have been authorized by the court under 11 U.S.C. § 327(a). With court approval, a debtor may employ counsel under 11 U.S.C. § 327(a) if they 1) "do not hold or represent an interest adverse to the estate" and 2) "are disinterested persons." In re Tevis, 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006). The term "adverse interest" means "(1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." In re Tevis, 347 B.R. at 688. A "disinterested person" is defined by the code as a person that:

> **(A)** is not a creditor, an equity security holder, or an insider;
> **(B)** is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> **(C)** does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)(A)-(C).

A person applying for employment under § 327(a) bears the burden of demonstrating that they and their firm do not hold an adverse interest and that they are disinterested. In re Capitol Metals Co., Inc., 228 B.R. 724, 727 (9th Cir. B.A.P. 1998). "Failure to be a disinterested person under section 101(14) is not a matter that could be waived." In re S.S. Retail Stores Corp., 211

B.R. 699, 703 (B.A.P. 9th Cir. 1997). A potential malpractice claim against counsel has been held to be a disqualifying interest for special counsel employed under a narrower provision, 11 U.S.C. § 327(e), where the issue for which counsel was to be employed could have had a direct financial impact on the firm. In re Melridge, Inc., 108 B.R. 748, 751 (D. Or. 1989). Furthermore, professionals seeking employment have an affirmative and continuing obligation under F.R.B.P. 2014 to disclose all connections to the debtor in order to aid the court in determining whether any conflicts of interest exist. In re Raj Kamal Corp., 2013 WL 6671493, at *5 (B.A.P. 9th Cir. Dec. 17, 2013).

Troutman both holds an adverse interest to the estate and is not a disinterested person as required by 11 U.S.C. § 327(a). First, Troutman acknowledged in the Amended 2014 Statement that he represented the LLC in connection with "several demand letters." (ECF Doc. 41). Additionally, the Southwicks might reasonably have believed that Troutman represented the LLC because a) Troutman provided no engagement agreement clarifying which party he represented and b) he regularly interacted with the LLC's chief financial officer, Craig Petersen, regarding his representation of the Debtors. The prior representation of the LLC is significant because, as a result of the Assignment Agreement, the LLC may hold claims against the Southwicks' bankruptcy estate. The dissolution and transfer of the LLC's assets to the Southwicks without payment of the LLC's creditors did not comply with Oregon's laws regarding winding up of an LLC, as argued in the U.S. Trustee's objection to Debtors' cash collateral motion. (ECF Doc. 13). Alternatively, the LLC or its creditors may have a claim against Debtors under the Uniform Fraudulent Transfers Act, O.R.S. §§ 95.200 to 95.310, or similar provisions of the Bankruptcy Code (e.g., 11 U.S.C. § 548(a)(1)). Troutman previously represented a party that is likely a creditor in this bankruptcy, creating a conflict of interest that is

disqualifying for purposes of employment under 11 U.S.C. § 327(a).

Second, both the Conflict Letter (Torimino Dec. Exhibit A) and the Repair Letter (Torimino Dec. Exhibit B) acknowledge that Mr. Troutman has a conflict of interest due to the circumstances surrounding the dissolution of the LLC. By advising Debtors to enter into the Assignment Agreement to reduce legal fees, Troutman created numerous issues for Debtors under both state law and federal bankruptcy law and likely prejudiced creditor rights. While Debtors apparently executed guarantees as to many of the LLC's obligations, at least some of the LLC's debts were the LLC's separate obligations prior to the Assignment Agreement. Similarly, the LLC is not liable on certain debts of the Southwicks. The status and potential forgivability of the PPP loan owed to Kabbage, Inc. may have been affected. One creditor has filed an adversary proceeding claiming that the transfer of substantially all the LLC's assets to the Debtors without prior written consent violated its agreement with the LLC and Debtors. Adv. No. 20-03119-pcm, ECF Doc. 1 ¶ 32.

The willingness of the PLF, a malpractice insurer, to fund the filing of the LLC's bankruptcy case should be interpreted to mean that Troutman may have potential malpractice liability with respect to his pre-petition representation of the Debtors and/or the LLC.[2] That potential malpractice liability is an "adverse interest" because it "create[s] either an actual or potential dispute in which the estate is a rival claimant," and potentially could lead Troutman "to possess a predisposition under circumstances that render such a bias against the estate." In re Tevis, 347 B.R. at 688. The potential malpractice liability may create circumstances where

---

[2] While it was suggested at the hearing on the Debtors' Motion for Use of Cash Collateral that the LLC could file its own bankruptcy case and that the Assignment Agreement could be unwound, allowing the two estates to be administered separately, there has so far been no agreement between the Southwicks and the LLC to unwind the transfers.

**Page 6 – UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY**

Troutman must choose whether to advise his client to take actions detrimental to his own personal financial interests. As recognized by the comments to the Model Rules of Professional Conduct, "[i]f the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Model Rules of Prof'l Conduct R. 1.7 cmt. 10. This conflict of interest is not waivable for purposes of 11 U.S.C. § 327(a). In re S.S. Retail Stores Corp., 211 B.R. at 703.

Lastly, by failing to amend the Rule 2014 verified statement to disclose as a "connection" the involvement of the PLF, including payment by the PLF of $11,717 for the filing of the LLC's bankruptcy, Troutman violated his *ongoing* duty to disclose connections under FRBP 2014. In re Raj Kamal Corp., 2013 WL 6671493, at *5 (B.A.P. 9th Cir. Dec. 17, 2013). Rule 2014 requires that professionals applying for employment disclose "*[a]ll facts that may be pertinent* to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate…." In re Park-Helena Corp., 63 F.3d 877, 882 (9th Cir. 1995)(emphasis in original). Professionals "cannot pick and choose which connections are irrelevant or trivial." Id. Following a request from the U.S. Trustee that Troutman file an amended Rule 2014 Verified Statement, Troutman filed the amended statement on October 29 (ECF No 41) but did not disclose any facts relating to the potential malpractice liability, the October 9 Conflict Letter, or the October 19 Repair Letter.

While denial of the Application will leave Debtors unrepresented, the Court should not take into consideration Debtors' ability to retain new counsel in making its determination under 11 U.S.C. § 327(a). The Bankruptcy Code does not provide for employment of non-disinterested persons, even if the alternative is a lack of legal representation.

/ / /

/ / /

**Page 7 – UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY**

## <u>CONCLUSION</u>

The U.S. Trustee objects to the employment on the grounds that Troutman has not met his burden of demonstrating that he is disinterested within the meaning of 11 U.S.C. § 327(a).

DATED this 11th day of December 2020.

Respectfully submitted,

GREGORY M. GARVIN
Acting United States Trustee for Region 18

/s/ Christian A. Torimino
CHRISTIAN A. TORIMINO
WSBA #52927, Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2020 I served a copy of the foregoing UNITED

STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY

ATTORNEY on all parties included on the Court's CM/ECF electronic service list.


GREGORY M. GARVIN
Acting United States Trustee for Region 18


/s/ Christian A. Torimino
CHRISTIAN A. TORIMINO
WSBA #52927, Trial Attorney

**CERTIFICATE OF SERVICE**

Christian A. Torimino, WSBA #52927
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
1220 SW 3rd Ave, Room 315
Portland, OR 97204
Telephone Number: (202) 306-4948
Email: christian.torimino@usdoj.gov

Attorney for Gregory M. Garvin,
Acting United States Trustee for Region 18

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>John Southwick, and<br><br>Rebecca Southwick,<br><br>                  Debtors-in-possession. | Case No. 20-32792-pcm11<br><br>**DECLARATION OF CHRISTIAN TORIMINO IN SUPPORT OF UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' APPLICATION TO EMPLOY ATTORNEY** |

I, Christian A. Torimino, declare as follows:

1. I am more than 18 years of age and am competent to testify to the matters set forth below.

2. I am a Trial Attorney in the Office of the United States Trustee ("U.S. Trustee"), United States Department of Justice, Region 18, Portland, Oregon.

3. On December 2nd, 2020, I emailed Ted Troutman requesting a copy of a conflicts letter that Troutman provided to the Debtors in the above-captioned case. He responded by providing the letter attached hereto as **Exhibit A**. While that letter attached to exhibit A is unsigned, I also received a signed copy with much lower image quality the following day. I attach the unsigned copy of the letter for legibility purposes, but I can provide the

signed version upon request.

4. In the same email chain, I requested that Mr. Troutman provide a copy of the "repair proposal" letter provided to the Debtors by the Professional Liability Fund. Attached as **Exhibit B** is the responsive email I received from Mr. Troutman on December 3, 2020, including the repair letter signed by John and Rebecca Southwick personally and John Southwick on behalf of International Collision Repair, LLC.

5. The lower right corner of each page of Exhibit A and B contain a Bates Stamp number affixed by our office, but the exhibits are otherwise true and correct copies of the responses provided by Mr. Troutman.

6. Attached hereto as **Exhibit C** is a copy of the August 20 "Assignment and Assumption Agreement" entered into by the Southwicks and International Collision Repair, LLC, as well as the October 5 "Ratification of Assignment of Bank Accounts" entered into by the same parties. Both of these documents were obtained from the docket, ECF No. 20, where they were filed as exhibits to Mr. Troutman's declaration in support of the Debtors' motion to use cash collateral. The exhibit stamps in the bottom right and the ECF stamp are therefore not related filing of this declaration.

DATED this 11th day of December 2020.

/s/ Christian A. Torimino
CHRISTIAN A. TORIMINO

# Exhibit A

# TED TROUTMAN
## TROUTMAN LAW FIRM P.C.
### 5075 SW Griffith Dr., Ste 220
### Beaverton, OR 97005

*tedtroutman@muir-troutman.com*
*tedtroutman@sbcglobal.net*

*Tel. (503) 292-6788*
*Fax (503) 596-2371*

October 7, 2020

Sent via e-mail to:     johnicr2@aol.com

John & Rebecca Southwick
2418 Donegal CT.
West Linn, OR 97068

RE:     Chapter 11 bankruptcy

Dear John and Rebecca:

I am writing to confirm our recent discussion in which I advised you that by failing to advise you to immediately close down your International Collision Repair LLC bank accounts on the date of transfer of assets and liabilities on August 20, 2020, it has resulted in the Court questioning whether the bank accounts are property of your bankruptcy estate. I believe we can overcome this issue since the company was dissolved on August 20, 2020, even though you continued to use the bank accounts. Once the company was dissolved, all future income was generated by you personally and not the LLC.

The purpose of this letter is to explain the personal conflict of interest that has now arisen for me and seek your consent to my continuing to represent you in this matter despite the allegation that I may have made an error. I am not asking you to waive any claim you might have against me or my firm.

The Oregon Rules of Professional Conduct ("RPCs") prohibit an attorney from representing a client when the attorney's personal interest conflicts with those of the client's, unless the client consents after being informed of the nature of the conflict, the risks involved and possible alternatives to providing consent. Consequently, I can continue to act as your attorney in this matter if you give your informed consent, confirmed in writing. Clients that are asked to waive or consent to personal conflicts typically should consider whether their attorney's professional judgment will be materially limited by the attorney's own personal interest in the matter due to the potential claim against them. For example, in your matter, you might be

TRO  000037

concerned that I will pursue or avoid certain strategies in order to protect my own interests, or my continued representation of you could or might affect the "zealousness or eagerness" with which I and my firm continue to represent you. Finally you should consider whether or not my ability to protect you confidential client communications will be impaired in any way by my desire to protect my own interest. Although I believe these risks are minimal, you must necessarily decide this for yourself.

Alternatives to consenting to my continued representation include, but are not limited to, seeking replacement counsel or representing yourselves.

The RPCs require me to recommend you consult independent counsel to determine whether consent should be given and I encourage you to do so. You are not obligated to consult such counsel if you do not wish to do so, however the choice is yours.

I am happy to discuss this matter further with you or an attorney of your choosing. If you decide to consent to my continued representation of you, please sign the enclosed copy of this letter and return it to me for your file.

Very Truly Yours,

Ted A. Troutman

TAT/ls
Enclosures

I have given this matter my consideration, understand my options and consent to Ted A. Troutman's and Troutman Law Firm's continued representation in my bankruptcy.

_____          _____
John Southwick                                      Rebecca Southwick

Date: _____          Date: _____

# Exhibit B

**Schaffer, Amy (USTP)**

| | |
|---|---|
| **From:** | Torimino, Christian (USTP) |
| **Sent:** | Thursday, December 3, 2020 12:03 PM |
| **To:** | Schaffer, Amy (USTP) |
| **Subject:** | FW: Southwick - Conflict Letter |
| **Attachments:** | signed letter.pdf |

Please bates stamp this.

**From:** Ted Troutman <tedtroutman@gmail.com>
**Sent:** Thursday, December 3, 2020 11:26 AM
**To:** Torimino, Christian (USTP) <Christian.Torimino@UST.DOJ.GOV>
**Subject:** Re: Southwick - Conflict Letter

Christian,

Attached is the repair proposal.

Thanks,

Ted

On Thu, Dec 3, 2020 at 11:06 AM Torimino, Christian (USTP) <Christian.Torimino@usdoj.gov> wrote:

Ted,


Our office has learned that the PLF sent Debtor a "repair proposal" on October 19, 2020. Please provide our office with a copy of that repair proposal and any other correspondence the Debtors received from the PLF.


Thank you,


Christian Torimino

Trial Attorney

U.S. Department of Justice

Office of the United States Trustee

620 SW Main Street, Room 213

Portland, OR 97205

1

TRO 000039

**From:** Ted Troutman <tedtroutman@gmail.com>
**Sent:** Wednesday, December 2, 2020 3:43 PM
**To:** Torimino, Christian (USTP) <Christian.Torimino@UST.DOJ.GOV>
**Subject:** Re: Southwick - Conflict Letter


Christian,


Here is the signed letter.


Thanks,


Ted


On Wed, Dec 2, 2020 at 3:04 PM Torimino, Christian (USTP) <Christian.Torimino@usdoj.gov> wrote:

Ted,


Thanks. Did the Debtors sign and return the letter? If so, we would like to see copy signed by the Debtors as well.


--Christian


**From:** Ted Troutman <tedtroutman@gmail.com>
**Sent:** Wednesday, December 2, 2020 2:50 PM
**To:** Torimino, Christian (USTP) <Christian.Torimino@UST.DOJ.GOV>
**Subject:** Re: Southwick - Conflict Letter


Christian,

2

TRO  000040

Here is the conflict letter.


Thanks,


Ted


On Wed, Dec 2, 2020 at 2:45 PM Torimino, Christian (USTP) <Christian.Torimino@usdoj.gov> wrote:

  Mr. Troutman,


  Can you please provide me with a copy of the conflict letter that you provided to John and Rebecca Southwick in connection with this case.


  Thank you,


  Christian Torimino

  Trial Attorney

  U.S. Department of Justice

  Office of the United States Trustee

  620 SW Main Street, Room 213

  Portland, OR 97205

  Temporary Telework Number: (202) 306-4948

  Email: christian.torimino@usdoj.gov

TRO  000041

--

Thank you,


Ted A Troutman

Troutman Law Firm PC

5075 SW Griffith Dr STE 220

Beaverton OR 97005


503-292-6788

503-596-2371 ( Fax)



*****CONFIDENTIALITY NOTICE***** This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.



--


Thank you,


Ted A Troutman

Troutman Law Firm PC

TRO  000042

5075 SW Griffith Dr STE 220

Beaverton OR 97005

503-292-6788

503-596-2371 ( Fax)

*****CONFIDENTIALITY NOTICE***** This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

--

Thank you,

Ted A Troutman
Troutman Law Firm PC
5075 SW Griffith Dr STE 220
Beaverton OR 97005

503-292-6788
503-596-2371 ( Fax)

*****CONFIDENTIALITY NOTICE***** This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

TRO  000043

Case 20-32792-pcm11    Doc 76    Filed 12/11/20

TRO  000044



Professional
Liability Fund

October 19, 2020

*Johnicr2@aol.com*

Sent Via Email: johnirc~~@aol~~.com and muskateal@aol.com

John and Rebecca Southwick
International Collision Repair, LLC
2418 Donegal Court
West Linn, OR 97068

Re: PLF File No.    :  055320
    Covered Party :  Ted A. Troutman
    Claimant        :  John and Rebecca Southwick

*In re John and Rebecca Southwick (dba International Collision Repair, LLC)*
United States Bankruptcy Court for the District of Oregon
Bankr. Case No. 20-32792-pm11

Dear Mr. and Mrs. Southwick,

I am an attorney employed by the Oregon State Bar Professional Liability Fund (PLF) and am writing on behalf of the PLF and Ted Troutman. Mr. Troutman reports he represents you in a small business Chapter 11 bankruptcy. It is my understanding that prior to the bankruptcy filing, you owned and operated an auto repair business through International Collision Repair LLC (LLC). In anticipation of bankruptcy, Mr. Troutman worked with you to have the LLC transfer assets in exchange for your assumption of LLC debt. Mr. Troutman then filed articles of dissolution of the LLC. I understand that the aim of the assignment and assumption was to have only you file for bankruptcy. The idea was to reduce legal expense.

As I understand, it appears that there is a question about whether all of the LLC's assets were transferred to you personally as planned – or at least the transfers were not fully documented prior to the bankruptcy filing. For example, the assignment and assumption agreement did not state that bank accounts were assigned. In addition, you continued to operate your business as if the LLC was not dissolved. For example, you did not notify insurance companies who pay for the body repair about the change. Finally, you did not change various insurance policies from the LLC to your names. The documentation and transactions raised concerns for the Bankruptcy Trustee (Amy Mitchell), the United States Trustee and the Bankruptcy Court. Apparently, they are concerned about whether all of the business assets belong to the bankruptcy estate and whether the creditors of the LLC have been harmed.

16037 SW Upper Boones Ferry Road, Suite 300
Tigard, Oregon 97224
PO Box 231600  |  Tigard, Oregon 97281-1600

*phone:* 503.639.6911 | *toll free:* 800.452.1639
*fax:* 503.684.7250 | *www.osbplf.org*

The PLF is Mr. Troutman's professional liability carrier. Subject to the terms and limits of the PLF Primary Coverage Plan, the PLF is obligated to defend and indemnify Mr. Troutman from any claim you may make against him with respect to the bankruptcy case. Based on the information available at this time, the PLF believes the Bankruptcy Trustee's, the United States Trustee's and the Bankruptcy Court's concerns might be resolved by hiring a separate attorney to represent the LLC in a companion bankruptcy case. The LLC's bankruptcy case should be jointly administered with your bankruptcy. The LLC and you should be able to propose a joint plan that may address the concerns of the Bankruptcy Trustee, the United States Trustee and the Bankruptcy Court. Essentially, the aim is to clean up the pre-bankruptcy transactions and leave you in the position you should have been in if you had initially filed bankruptcy for the LLC, as well as yourself.

While we cannot provide you with legal advice, we do want you to know that we believe that filing a companion bankruptcy for the LLC may reduce or eliminate possible damages related to the pre-bankruptcy assignment and assumption as well as related conduct.

Without admitting liability, the PLF offers to pay the LLC bankruptcy filing fee (which I understand to be $1,717) plus up to a maximum of $10,000 of legal fees and additional expenses for an attorney to represent the LLC in filing a bankruptcy case. I am taking the liberty of providing you with contact information for some bankruptcy attorneys who I understand represent small businesses. Those attorneys are:

Michael D. O'Brien
Michael D. O'Brien & Associates PC
12909 SW 68th Pkwy, Suite 160
Portland, OR 97223
503 786-3800
mike@pdxlegal.com

Douglas R. Ricks
Vanden Bos & Chapman LLP
319 SW Washington Street, Suite 520
Portland, OR 97204
503 241-4869
doug@vbcattorneys.com

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204
503 417-0508
nhenderson@portlaw.com

TRO 000046

The selection of an attorney is up to you. You are in no way limited to selecting an attorney from the list of attorneys identified above. You are welcome to retain an attorney who is not identified above (or to refrain from retaining an attorney to represent the LLC, if you so choose).

Please understand that if you agree to this proposal to pay the filing fee, as well as attorney fees and expenses up to a maximum of $10,000 as set forth above, you will not be waiving any claims you may have against Mr. Troutman and the PLF. Likewise, this proposal nor our payment of attorney fees and costs will be deemed admissions of liability or fault by Mr. Troutman or the PLF. Mr. Troutman will retain all of his defenses to any claims that you may assert against him. Additionally, you agree not to introduce into evidence, at any matter or proceeding against Mr. Troutman, this letter agreement by the PLF or the payment of fees and expenses discussed in this letter.

In order for the PLF to pay the fees and expenses as discussed above, it will be necessary for the PLF to review your attorney's billing statements prior to paying any amount (to avoid payment for tasks we have not agreed to pay for). Your attorney should take care not to include details that might disclose any of your confidences or secrets to the PLF. Your attorney can submit billing statements directly to the PLF for payment. It will not be necessary to pay the attorney first with respect to the tasks the PLF has agreed to pay for. However, if you prefer, your attorney can provide billing statements to you for your payment and you can request reimbursement from the PLF after providing us with a copy of the paid billing statement and proof of your payment.

A conflict of interest may exist between you on the one hand and Mr. Troutman and the PLF on the other. In order for us to pay any fees and expenses discussed in this letter, you will need to waive this conflict by signing this letter agreement. Although under this letter agreement you will retain all of your rights to pursue Mr. Troutman and the PLF regarding any claim, it is nevertheless appropriate for you to consult with independent counsel concerning whether it is in your best interest to enter into this letter agreement. You may be concerned that the PLF's payment of the fees and costs discussed above may affect your attorney's judgment and advice or you may wish to discuss with independent counsel whether you should immediately pursue a claim against Mr. Troutman instead of continuing in bankruptcy.

Please keep in mind that this letter agreement does not toll or stop the running of the applicable statute of limitations on any lawsuit that you might be consider. The statute of limitations continues to run and may expire while discussions with us are underway.

If you wish to agree to the PLF's proposal, please sign this letter agreement and return it to me by fax, email, or mail. Please note that I am willing to discuss this proposal with independent counsel of your choice. If that attorney would like to discuss this proposal with me, please ask him or her to call me. This letter agreement constitutes a final written expression of all the terms of this letter agreement. Any and all representations, promises, or statements by the parties to this letter agreement, or their representatives, that differ in any way from the terms of this letter agreement shall be given no force and effect. This proposal and letter agreement shall be changed, amended, or modified only by a written agreement signed by both the PLF and you, or your representative. This letter agreement shall not be modified or altered by any course of conduct by either party.

Thank you for your careful attention in this regard.

Sincerely,

*[signature]*

Sharnel K. Mesirow
Claims Attorney

SKM/mt

International Collision Repair LLC

Name: _John Southwick_
Title: _Owner_
Date: _11-3-2020_

John Southwick
Date: _11-03-2020_

Rebecca Southwick
Date: _11-03-2020_

c:    Ted A. Troutman (Personal and Confidential)

**Exhibit C**

## Assignment & Assumption Agreement

FROM:     INTERNATIONAL COLLISION REPAIR, LLC

TO:     JOHN SOUTHWICK & REBECCA SOUTHWICK

     In exchange for the agreement of John & Rebecca Southwick to assume all outstanding debt of International Collision Repair, LLC, including all secured loans, unsecured loans, accounts payable and unpaid wages owed by International Collision Repair, LLC but excluding any taxes that could not be personally assessed to John & Rebecca Southwick. International Collision Repair, LLC hereby assigns to John & Rebecca Southwick all rights, title and interest in all inventory and equipment located at International Collision Repair, LLC, 9817 East Burnside Street, Portland Oregon 97216. International Collision Repair, LLC also hereby assigns all outstanding accounts receivable, all inventory and all work in progress located at International Collision Repair, LLC. This Assignment also includes the right to use the name 'International Collision Repair'. International Collision Repair also assigns the lease with Baltz Bunside Holdings for the property at 9817 East Burnside Street, Portland Oregon 97216.

_____     Dated: August 20, 2020
*International Collision Repair, LLC*
*By John Southwick, Managing Member*

_____     Dated: August 20, 2020
*John Southwick*

_____     Dated: August 20, 2020
*International Collision Repair, LLC*
*By Rebecca Southwick, Member*

_____     Dated: August 20, 2020
*Rebecca Southwick*

     This Assignment and Assumption Agreement is approved by resolution of the Board of Directors.

_____     Dated: August 20, 2020
*John Southwick, Member of*
*International Collision Repair, LLC*

EXHIBIT 1
Page 1 of 1

# Ratification of Assignment of Bank Accounts

FROM:      INTERNATIONAL COLLISION REPAIR, LLC

TO:          JOHN SOUTHWICK & REBECCA SOUTHWICK

      The Assignment of assets dated 08/20/2020 was also intended to assign all bank accounts and the members of International Collision Repair, LLC hereby ratifies the prior transfer of the bank accounts of International Collision Repair, LLC to John and Rebecca Southwick as part of the assignment of assets and of assumption of liabilities, which is attached.

_____          Dated: October 5, 2020
*International Collision Repair, LLC*
*By John Southwick, Managing Member*

_____          Dated: October 5, 2020
*John Southwick*

_____          Dated: October 5, 2020
*International Collision Repair, LLC*
*By Rebecca Southwick, Member*

_____          Dated: October 5, 2020
*Rebecca Southwick*

EXHIBIT 2
Page 1 of 1